UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:

CMA OF DELAWARE, INC.
and NATIONAL BEVERAGE CORP.,

       Plaintiffs,

v.

DAVID B. MURSTEN,

       Defendant.

_____/

## COMPLAINT

Plaintiffs, CMA OF DELAWARE, INC. and NATIONAL BEVERAGE CORP., sue Defendant, DAVID B. MURSTEN, and allege:

1.      Plaintiff, CMA OF DELAWARE, INC. a/k/a Corporate Management Advisors, Inc. ("CMA"), is a Delaware corporation with its principal place of business in Broward County, Florida.

2.      Plaintiff, NATIONAL BEVERAGE CORP. ("NBC"), is a Delaware corporation with its principal place of business in Broward County, Florida.

3.      Defendant, DAVID B. MURSTEN ("MURSTEN"), is a citizen of the State of Georgia and a member of the Florida Bar, Bar No. 267147.

4.      This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because: (1) the amount in controversy exceeds $75,000, exclusive of interest and costs, and (2) the parties to this action are citizens of different states.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of MURSTEN'S acts and omissions giving rise to the claims contained herein

occurred in this district.

6.      MURSTEN was, at all relevant times, an employee of, or consultant to, NBC and CMA working in various capacities, including providing assistance in legal matters for NBC and CMA.

7.      As an employee of and consultant to NBC and CMA, MURSTEN was required as a pre-condition to, and did, enter into Confidentiality Agreements with NBC and CMA to protect their confidential information.

8.      On June 13, 2005, MURSTEN acknowledged that he was aware of company policies regarding confidentiality obligations and acknowledged that he had previously executed a Confidentiality Agreement agreeing not to disclose or make use of confidential information, knowledge or data about NBC.  *Exhibit 1 attached hereto ("It is imperative that great care and attention be afforded the Company's confidential information and that all employees refrain from any such disclosure.").*

9.      On August 21, 2006, MURSTEN executed a Confidentiality Agreement ("2006 Confidentiality Agreement") "in consideration of and as a condition of [his] employment or continued employment with" CMA.  *Exhibit 2 attached hereto.*

10.     The 2006 Confidentiality Agreement required MURSTEN "to keep confidential and not to disclose or make use of at any time either during or subsequent to [his] employment, any trade secrets, confidential information, knowledge, data or other information of CMA or those companies or persons it provides management services to, including National Beverage Corp. and its subsidiaries (collectively, the Company), relating to products, processes, know-

2

how, designs, formulas, test-data, customer lists, business plans, marketing plans and strategies, pricing strategies, or other subject matter pertaining to any business of the Company or any of its clients, customers, consultants, or affiliates which [he] may produce, obtain or otherwise acquire during the course of [his] employment."

11.    The 2006 Confidentiality Agreement, by its terms, had no expiration date and continues indefinitely.

12.    In exchange for agreeing to the broad protections in the 2006 Confidentiality Agreement, MURSTEN was given access to and in fact received significant amounts of confidential and privileged information belonging to NBC and CMA.

13.    Through September 2010 and October 2011, MURSTEN performed services for CMA and NBC.  MURSTEN was well compensated for those services.  At MURSTEN's request and direction, payments for those services were made to companies with which MURSTEN was affiliated.  Specifically, MURSTEN was paid $117,748 for services rendered between September 2010 into November 2011.  *Composite Exhibit 3 attached hereto*.

14.    On January 24, 2011, MURSTEN executed a Confidentiality and Non-Disclosure Agreement ("2011 Confidentiality and Non-Disclosure Agreement") "as an employee or consultant of National Beverage Corp. or its subsidiaries or affiliates (the Company)" in connection with "a possible business transaction (the "Transaction")" involving NBC.  *Exhibit 4 attached hereto*.

15.    The 2011 Confidentiality and Non-Disclosure Agreement included the following language: "At all times during and subsequent to my employment and service to the Company, I

3

agree to keep in strictest confidence the information that is disclosed to me related to the Transaction or to which I have access or have indirectly gained knowledge ("Confidential Information"). I recognize that the existence of such Confidential Information is deemed to be material non-public information, and I will accordingly take all reasonable actions to prevent the unauthorized use or disclosure of the Confidential Information to any other employee or consultant or to any third party.  I will not use or disclose the Confidential Information without the written consent of the Company, except as necessary in the ordinary course of my duties as an employee or consultant of the Company as it relates to my direct involvement in the Transaction."

16.     The 2011 Confidentiality and Non-Disclosure Agreement also included the following language: "Upon termination of my employment by or service to the Company or upon the Company's request, I will promptly surrender to the Company all Confidential Information (including all copies, in whatever form) in my possession, custody or control, and I will not keep or take with me any of the written or documented Confidential Information."

17.     The transaction which was the basis for the 2011 Confidentiality and Non-Disclosure Agreement was never consummated and all substantive negotiations ended in or about June 2011.

18.     By its terms, the 2011 Confidentiality and Non-Disclosure Agreement has not expired.

19.     In exchange for agreeing to the broad protections in the 2011 Confidentiality and Non-Disclosure Agreement, MURSTEN was given access to and in fact received significant

4

amounts of confidential and privileged information belong to NBC and CMA.

20. Sometime before December 12, 2012, MURSTEN met with, and retained, the law firm of Colson Hicks Eidson for the purpose of pursuing a lawsuit against Nick A. Caporella, the Chairman and Chief Executive Officer of NBC and 100% owner of CMA.

21. In clear violation of the trust placed in him, in clear violation of his professional attorney-client privileged obligations to his clients, and in utter disregard for his clear contractual obligations, MURSTEN disclosed to Colson Hicks Eidson confidential information encompassed by the Confidentiality Agreements executed by him - - and without the knowledge, acquiescence, or consent of NBC or CMA, all in an attempt to extort money for himself.

22. On December 12, 2012, MURSTEN filed a lawsuit in the United States District Court for the Southern District of Florida, *David B. Mursten v. Nick A. Caporella*, Case No. 12-CV-62474-COHN, ("*Mursten I*") which falsely and scandalously alleged that Nick A. Caporella breached an oral agreement of employment with MURSTEN. That lawsuit, a thinly veiled attempt at extortion, was improperly developed using NBC's and/or CMA's confidential and privileged information improperly disclosed and retained by MURSTEN.

23. During the course of *Mursten I*, Mursten continued to improperly disclose confidential information encompassed by the 2006 Confidentiality Agreement and the 2011 Confidentiality and Non-Disclosure Agreement, including, but not limited to, the disclosure of thousands of pages of privileged and/or confidential documents belonging to NBC and CMA.

24. In addition, in the course of *Mursten I*, MURSTEN improperly disclosed attorney-client privileged information that he received while working in his capacity as legal

counsel to NBC and CMA.

25.     *Mursten I* was voluntarily dismissed by MURSTEN on April 12, 2013.

26.     Sometime before January 3, 2014, MURSTEN met with and retained the law firm of Coffey Burlington, P.L. for the purpose of re-filing his lawsuit against Nick A. Caporella.

27.     Even though his previous attempt to extort money had been unsuccessful, MURSTEN again, further violating the trust placed in him, again in clear violation of his professional attorney-client obligations to his clients, and again in utter disregard for his contractual obligations, MURSTEN improperly disclosed to Coffey Burlington confidential information encompassed by the Confidentiality Agreements he executed without the knowledge, acquiescence or consent of NBC or CMA.  Further, MURSTEN disclosed to Coffey Burlington not only confidential information but also attorney/client privileged information to Coffey Burlington - - all while Coffey Burlington was counsel for a party suing NBC in the Miami Dade County Circuit Court.  In connection with that court proceeding, MURSTEN, who had prior to his engagement of Coffey Burlington been actively involved in that court proceeding on behalf of NBC by, *inter alia*, providing in-house legal services in 2010 and 2011, thereafter wrongfully disclosed such confidential and privileged information to Coffey Burlington in total disregard of (i) the Confidentiality Agreements, (ii) the attorney/client privilege owned by NBC and (iii) the ethical prohibition of such unauthorized disclosures under the Rules Regulating The Florida Bar.  And, in connection with that Court proceeding, MURSTEN not only colluded with Coffey Burlington to the prejudice of NBC, but also filed a false and perjured Affidavit dated May 23, 2014 in connection with a then pending Motion to Disqualify the Coffey Burlington law

6

firm.

28.     On January 3, 2014, MURSTEN filed a lawsuit in the United States District Court for the Southern District of Florida, *David B. Mursten v. Nick A. Caporella*, Case No. 14-CV-60014-COHN, ("*Mursten II*") which again falsely and scandalously alleged that Mr. Caporella had breached an oral agreement of employment with MURSTEN.  *Mursten II*, MURSTEN's second attempt at extortion, was also improperly developed using NBC's and /or CMA's confidential and privileged information.

29.     During the course of the *Mursten II*, MURSTEN improperly disclosed and continues to improperly disclose confidential information encompassed by the Confidentiality Agreements including, but not limited to, the disclosure of thousands of pages of privileged and/or confidential documents belonging to NBC and CMA.   This information and documentation includes (i) private, attorney/client privileged communications between Nick Caporella, NBC's Chairman and CEO, and NBC's outside counsel, (ii) other attorney/client privileged information and documentation such as legal documents, Affidavits and drafts thereof, (iii) documents and information related to the Miami Dade County Circuit Court proceedings referenced in ¶27, above, (iv) documents personal to other employees of NBC and/or CMA such as statutorily protected bank records and statements, and (v) documents personal to shareholders of NBC and/or CMA such as records of certain trust distributions.

30.     In addition, in the course of *Mursten II*, MURSTEN improperly disclosed and continues to improperly disclose attorney-client privileged information that was received while working in his capacity as legal counsel to NBC and CMA.

31.     MURSTEN, through his counsel, has continued to threaten the public disclosure of confidential information in an attempt to extort money from NBC and CMA, and NBC and CMA management.    On July 16, 2014, MURSTEN, through his counsel, threatened that Mursten could freely publish an article in the Wall Street Journal on the details of the confidential information MURSTEN is bound to keep confidential and not disclose under the terms of the 2006 Confidentiality Agreement and the 2011 Confidentiality and Non-Disclosure Agreement.    Such threats to injure NBA and CMA through the disclosure of confidential information in blatant disregard of MURSTEN's contractual and professional obligations are but another example of the injury already caused, being caused and about to be caused to NBC (a publicly traded company) and CMA by MURSTEN's improper actions.

32.     All conditions precedent to the commencement of this action have been performed, waived or excused.

<u>**COUNT I**</u>

<u>**CLAIM FOR MONEY DAMAGES BY NBC FOR BREACH OF THE 2006 CONFIDENTIALITY AGREEMENT BY MURSTEN**</u>

NBC realleges and reavers paragraphs 1-32, and would further allege:

33.     On August 21, 2006, MURSTEN executed the 2006 Confidentiality Agreement whereby he agreed not to disclose or make use of any confidential information, knowledge or documents received during the course of his employment with CMA and those companies for which it provided management services, including NBC.

34.     NBC is a beneficiary of the 2006 Confidentiality Agreement.

35.     MURSTEN breached the 2006 Confidentiality Agreement by disclosing to third parties confidential information and documents belonging to NBC.

36.     NBC has been injured and damaged as a result of MURSTEN's breach of the 2006 Confidentiality Agreement.

37.     MURSTEN continues breaching the 2006 Confidentiality Agreement by continuing to disclose to third parties confidential information and documents belonging to NBC.

WHEREFORE, NBC seeks money damages resulting from MURSTEN's violation of the 2006 Confidentiality Agreement, together with interest and costs.

**COUNT II**

**CLAIM FOR MONEY DAMAGES BY CMA FOR BREACH OF
THE 2006 CONFIDENTIALITY AGREEMENT BY MURSTEN**

CMA realleges and reavers paragraphs 1-32, and would further allege:

38.     On August 21, 2006, MURSTEN executed the 2006 Confidentiality Agreement whereby he agreed not to disclose or make use of any confidential information, knowledge or documents received during the course of his employment with CMA and those companies for which it provided management services, including NBC.

39.     MURSTEN breached the 2006 Confidentiality Agreement by disclosing to third parties confidential information and documents belonging to CMA.

40.     CMA has been injured and damaged as a result of MURSTEN's breach of the 2006 Confidentiality Agreement.

41.     MURSTEN continues breaching the 2006 Confidentiality Agreement by continuing to disclose to third parties confidential information and documents belonging to

CMA.

WHEREFORE, CMA seeks money damages resulting from MURSTEN's violation of the 2006 Confidentiality Agreement, together with interest and costs.

## COUNT III

## CLAIM FOR MONEY DAMAGES BY NBC FOR BREACH OF THE 2011 CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT BY MURSTEN

NBC realleges and reavers paragraphs 1-32, and would further allege:

42.     On January 24, 2011, MURSTEN executed the 2011 Confidentiality and Non-Disclosure Agreement whereby he agreed not to disclose or make use of any confidential information, knowledge or documents received during the course of his employment or consulting with NBC or its subsidiaries and affiliates.

43.     MURSTEN breached the 2011 Confidentiality and Non-Disclosure Agreement by disclosing to third parties confidential information and documents belonging to NBC.

44.     NBC has been injured and damaged as a result of MURSTEN's breach of the 2011 Confidentiality and Non-Disclosure Agreement.

45.     MURSTEN continues breaching the 2011 Confidentiality and Non-Disclosure Agreement by continuing to disclose to third parties confidential information and documents belonging to NBC.

46.     The 2011 Confidentiality and Non-Disclosure Agreement included a provision for the payment of attorney's fees incurred to enforce the Agreement.

WHEREFORE, NBC seeks money damages resulting from violation of the 2011 Confidentiality and Non-Disclosure Agreement, together with attorney's fees, interest and costs.

## COUNT IV

### CLAIM FOR MONEY DAMAGES BY CMA FOR BREACH OF THE 2011 CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT BY MURSTEN

CMA realleges and reavers paragraphs 1-32 and would further allege:

47.     On January 24, 2011, MURSTEN executed the 2011 Confidentiality and Non-Disclosure Agreement whereby he agreed not to disclose or make use of any confidential information or documents received during the course of his employment or consulting with NBC or its subsidiaries and affiliates, including CMA.

48.     CMA is a beneficiary of the 2011 Confidentiality and Non-Disclosure Agreement and was included with the entities covered by the 2011 Confidentiality and Non-Disclosure Agreement.

49.     MURSTEN breached the 2011 Confidentiality and Non-Disclosure Agreement by disclosing to third parties confidential information and documents belonging to CMA.

50.     CMA has been injured and damaged as a result of MURSTEN's breach of the 2011 Confidentiality and Non-Disclosure Agreement.

51.     MURSTEN continues to this day breaching the 2011 Confidentiality and Non-Disclosure Agreement by disclosing to third parties confidential information, knowledge and documents which are the property of CMA.

52.     The 2011 Confidentiality and Non-Disclosure Agreement included a provision for the payment of attorney's fees incurred to enforce the Agreement.

WHEREFORE, CMA seeks money damages resulting from MURSTEN's violation of the 2011 Confidentiality and Non-Disclosure Agreement, together with attorney's fees, interest

and costs.

## COUNT V

### CLAIM FOR MONEY DAMAGES BY NBC FOR BREACH OF FIDUCIARY DUTY BY VIOLATING ATTORNEY-CLIENT PRIVILEGE BY MURSTEN

NBC realleges and reavers paragraphs 1-32 and further alleges:

53.     During his employment by NBC, MURSTEN entered into an attorney-client relationship with NBC during the course of which he provided periodic legal services to NBC.

54.     During the course of his attorney-client relationship with NBC, MURSTEN engaged in confidential communications with and otherwise gained confidential information from NBC and its officers, directors, employees and representatives in order to render legal services.

55.     During these communications, confidential business and proprietary information was disclosed to MURSTEN to enable him to render legal advice to NBC ("attorney-client communications").

56.     As a result of the attorney-client relationship between MURSTEN and NBC, MURSTEN owed a duty and has a continuing duty to NBC to maintain in confidence and not to disclose the attorney-client communications to third parties.

57.     MURSTEN has intentionally breached his fiduciary duty arising from the attorney-client relationship with NBC by disclosing attorney-client communications with third parties without NBC's permission and without waiver of the attorney-client privilege.

58.     As a direct and proximate result of MURSTEN's breach of his fiduciary duty by violating the attorney-client privilege, NBC has suffered damages.

WHEREFORE, NBC seeks money damages resulting from MURSTEN's breach of fiduciary duties, together with interest and costs.

## COUNT VI

## CLAIM FOR MONEY DAMAGES BY CMA FOR BREACH OF FIDUCIARY DUTY BY VIOLATING ATTORNEY-CLIENT PRIVILEGE BY MURSTEN

CMA realleges and reavers paragraphs 1-32 and further alleges:

59.     During his employment by CMA, MURSTEN entered into an attorney-client relationship with CMA during the course of which he provided periodic legal services to CMA.

60.     During the course of his attorney-client relationship with CMA, MURSTEN engaged in confidential communications and otherwise gained confidential information and documentation with CMA and its officers, directors, employees and representatives in order to render legal services.

61.     During these communications, confidential business and proprietary information was disclosed to MURSTEN to enable him to render legal advice to CMA ("attorney-client communications").

62.     As a result of the attorney-client relationship between MURSTEN and CMA, MURSTEN owed a duty and has a continuing duty to CMA to maintain in confidence and not to disclose the attorney-client communications to third parties.

63.     MURSTEN has intentionally and maliciously breached his fiduciary duty arising from the attorney-client relationship with CMA by disclosing attorney-client communications with third parties without CMA's permission and without waiver of the attorney-client privilege.

64.     As a direct and proximate result of MURSTEN's breach of his fiduciary duty by

violating the attorney-client privilege, CMA has suffered damages.

WHEREFORE, CMA seeks money damages resulting from MURSTEN's breach of fiduciary duties, together with interest and costs.

## COUNT VII

### CLAIM FOR INJUNCTIVE RELIEF BY NBC FOR BREACH OF THE 2006 CONFIDENTIALITY AGREEMENT BY MURSTEN

NBC realleges and reavers paragraphs 1-32, and would further allege:

65.     On August 21, 2006, MURSTEN executed the 2006 Confidentiality Agreement whereby he agreed not to disclose or make use of any confidential information, knowledge or documents received during the course of his employment with CMA and those companies for which it provided management services, including NBC.

66.     NBC is a beneficiary of the 2006 Confidentiality Agreement.

67.     MURSTEN breached the 2006 Confidentiality Agreement by disclosing to third parties confidential information and documents belonging to NBC, and by improperly retaining confidential information.

68.     NBC has been injured and damaged as a result of MURSTEN's breach of the 2006 Confidentiality Agreement.

69.     MURSTEN continues breaching the 2006 Confidentiality Agreement by continuing to disclose to third parties confidential information and documents belonging to NBC and by continuing to improperly retain confidential information.

70.     If MURSTEN is not enjoined from continuing to breach the 2006 Confidentiality

14

Agreement, NBC will suffer irreparable harm.

71.     NBC has no other adequate remedy at law, and this action for injunctive relief is NBC's only means for securing relief.

WHEREFORE, NBC seeks injunctive relief including, but not limited to, restraining further violation of the 2006 Confidentiality Agreement and the return of the confidential information.

**COUNT VIII**

**CLAIM FOR INJUNCTIVE RELIEF BY CMA FOR BREACH OF
THE 2006 CONFIDENTIALITY AGREEMENT BY MURSTEN**

CMA realleges and reavers paragraphs 1-32, and would further allege:

72.     On August 21, 2006, MURSTEN executed the 2006 Confidentiality Agreement whereby he agreed not to disclose or make use of any confidential information, knowledge or documents received during the course of his employment with CMA and those companies for which it provided management services, including NBC.

73.     MURSTEN breached the 2006 Confidentiality Agreement by disclosing to third parties confidential information and documents belonging to CMA, and by improperly retaining confidential information.

74.     CMA has been injured and damaged as a result of MURSTEN's breach of the 2006 Confidentiality Agreement.

75.     MURSTEN continues breaching the 2006 Confidentiality Agreement by continuing to disclose to third parties confidential information and documents belonging to CMA and by continuing to improperly retain confidential information.

15

76.     If MURSTEN is not enjoined from continuing to breach the 2006 Confidentiality Agreement, CMA will suffer irreparable harm.

77.     CMA has no other adequate remedy at law, and this action for injunctive relief is CMA's only means for securing relief.

WHEREFORE, CMA seeks injunctive relief including, but not limited to, restraining further violation of the 2006 Confidentiality Agreement and the return of the confidential information.

<u>COUNT IX</u>

**<u>CLAIM FOR INJUNCTIVE RELIEF BY NBC FOR BREACH OF THE
2011 CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT BY MURSTEN</u>**

NBC realleges and reavers paragraphs 1-32, and would further allege:

78.     On January 24, 2011, MURSTEN executed the 2011 Confidentiality and Non-Disclosure Agreement whereby he agreed not to disclose or make use of any confidential information, knowledge or documents received during the course of his employment or consulting with NBC or its subsidiaries and affiliates.

79.     MURSTEN breached the 2011 Confidentiality and Non-Disclosure Agreement by improperly retaining confidential information and by disclosing to third parties confidential information and documents belonging to NBC.

80.     NBC has been injured and damaged as a result of MURSTEN's breach of the 2011 Confidentiality and Non-Disclosure Agreement.

81.     MURSTEN continues breaching the 2011 Confidentiality and Non-Disclosure Agreement by continuing to disclose to third parties confidential information and documents

16

belonging to NBC and by continuing to improperly retain confidential information.

82.     If MURSTEN is not enjoined from continuing to breach the 2011 Confidentiality

and Non-Disclosure Agreement, NBC will suffer irreparable harm.

83.     NBC has no other adequate remedy at law, and this action for injunctive relief is

NBC's only means for securing relief.

84.     The 2011 Confidentiality and Non-Disclosure Agreement included a provision for

the payment of attorney's fees incurred to enforce it.

WHEREFORE, NBC seeks injunctive relief including, but not limited to, restraining

further violation of the 2011 Confidentiality and Non-Disclosure Agreement and the return of the

confidential information, together with attorney's fees and costs.

## COUNT X

### CLAIM FOR INJUNCTIVE RELIEF BY CMA FOR BREACH OF THE
### 2011 CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT BY MURSTEN

CMA realleges and reavers paragraphs 1-32 and would further allege:

85.     On January 24, 2011, MURSTEN executed the 2011 Confidentiality and Non-

Disclosure Agreement whereby he agreed not to disclose or make use of any confidential

information or documents received during the course of his employment or consulting with NBC

or its subsidiaries and affiliates, including CMA.

86.     CMA is a beneficiary of the 2011 Confidentiality and Non-Disclosure Agreement

and was included with the entities covered by the 2011 Confidentiality and Non-Disclosure

Agreement.

87.     MURSTEN breached the 2011 Confidentiality and Non-Disclosure Agreement by

17

improperly retaining confidential information and by disclosing to third parties confidential information and documents belonging to CMA.

88.     CMA has been injured and damaged as a result of MURSTEN's breach of the 2011 Confidentiality and Non-Disclosure Agreement.

89.     MURSTEN continues to this day breaching the 2011 Confidentiality and Non-Disclosure Agreement by continuing to improperly retain confidential information and by continuing to disclose to third parties confidential information, knowledge and documents which are the property of CMA.

90.     If MURSTEN is not enjoined from continuing to breach the 2006 Confidentiality and Non-Disclosure Agreement, CMA will suffer irreparable harm.

91.     CMA has no other adequate remedy at law, and this action for injunctive relief is CMA's only means for securing relief.

92.     The 2011 Confidentiality and Non-Disclosure Agreement included a provision for the payment of attorney's fees incurred to enforce it.

WHEREFORE, CMA seeks injunctive relief including, but not limited to, restraining further violation of the 2011 Confidentiality and Non-Disclosure Agreement and the return of the confidential information, together with attorney's fees and costs.

## COUNT XI

## CLAIM FOR PUNITIVE DAMAGES BY NBC

NBC realleges and reavers paragraphs 1-32 and further alleges:

93.     MURSTEN, a lawyer and member of the Florida bar, has, as described herein, acted willfully, wantonly, and maliciously, in order to obtain pecuniary benefit for himself.

94.     MURSTEN's actions go far beyond simple breaches of his obligations to NBC. MURSTEN, a lawyer and member of the Florida bar, as described herein, has acted recklessly, with utter disregard for his obligations to NBC, with a design and intent to oppress NBC, and acted outrageously, with moral turpitude, insult and fraud on NBC.

95.     In light of the nature and reprehensibility of MURSTEN's actions, punitive damages can and should be awarded in an amount to be determined.

WHEREFORE, NBC seeks punitive damages against MURSTEN together with interest and costs.

## COUNT XII

### CLAIM FOR PUNITIVE DAMAGES BY CMA

CMA realleges and reavers paragraphs 1-32 and further alleges:

96.     MURSTEN, a lawyer and member of the Florida bar, has, as described herein, acted willfully, wantonly, and maliciously, in order to obtain pecuniary benefit for himself.

97.     MURSTEN's actions go far beyond simple breaches of his obligations to CMA. MURSTEN, as described herein, has acted recklessly, with utter disregard for his obligations to CMA, with a design and intent to oppress CMA, and acted outrageously, with moral turpitude, insult and fraud on CMA.

98.     In light of the nature and reprehensibility of MURSTEN's actions, punitive

damages can and should be awarded in an amount to be determined.

WHEREFORE, CMA seeks punitive damages against MURSTEN together with interest

and costs.

Dated this 9th day of September, 2014.

Respectfully Submitted,

KRUPNICK CAMPBELL MALONE
BUSER SLAMA HANCOCK LIBERMAN
12 S.E. Seventh Street, Suite 801
Fort Lauderdale, FL 33301
Telephone:     (954) 763-8181
Facsimile:      (954) 763-8292


By:  s/ Walter G. Campbell, Jr.
            Walter G. Campbell, Jr.
            Florida Bar No. 161009
            wcampbell@krupnicklaw.com

20